UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MOHAMED MOHIELDEEN ABD
ALR AHMED,
          Plaintiff,

v.

ALEJANDRO N. MAYORKAS,
Secretary of Homeland Security;
UNITED STATES CITIZENSHIP
AND IMMIGRATION SERVICES; and
UNITED STATES DEPARTMENT OF
JUSTICE,
          Defendants.
_____/

Case No. 22-cv-12015

Paul D. Borman
United States District Judge

## **OPINION AND ORDER DISMISSING THIS CASE AS MOOT**

On May 17, 2023, this Court outlined the basic facts of this case, noted that Defendants Alejandro Mayorkas (Secretary of Homeland Security), United States Citizenship and Immigration Services, and the United States Department of Justice have filed a motion to dismiss, and ordered the parties to file supplemental briefs on whether this case is moot because the fiscal year of 2021 has ended and/or because Plaintiff Mohamed Ahmed has been granted asylum. (ECF No. 11.) Ahmed filed his supplemental brief two weeks later, and Defendants filed their supplemental brief two weeks after that. (ECF Nos. 12, 13.)

1

For the reasons that follow, the Court finds that this case is moot under *Mwasaru v. Napolitano*, 619 F.3d 545 (6th Cir. 2010) (interpreting 8 U.S.C. § 1154(a)(1)(I)(ii)(II)).

## Arguments

Ahmed concedes that "8 U.S.C. § 1154(a)(1)(I)(ii)(II)" of the Immigration Nationality Act ("INA") "provides that '[a]liens who qualify, through random selection, for a [diversity] visa under section 203(c) [8 U.S.C. § 1153(c)] shall remain eligible to receive such visa only through the end of the specific year for which they were selected.'" (ECF No. 12, PageID 152–53.) But, he argues, "the agency has the authority to grant [him] adjustment of status *nunc pro tunc* where the application was denied due to agency error," "or at the very least, it has the obligation to make a determination as to whether it has that authority," per *Ramirez-Canales v. Mukasey*, 517 F.3d 904 (6th Cir. 2008). (ECF No. 12, PageID 153–54.) He contends that *Mwasaru* "is not controlling authority to the contrary" because it did not consider the option of *nunc pro tunc* relief, and even if it did "silently reject[]" that option, "it still would have no binding or even persuasive authority," because it would contradict the Sixth Circuit's prior decision in *Ramirez-Canales*. (ECF No. 12, PageID 154–56.)

Defendants respond that "[a]fter September 30, 2021, [Ahmed] was no longer eligible for a diversity visa" "[p]ursuant to 8 U.S.C. § 1154(a)(1)(I)(ii)(II)" and

2

*Mwasaru*. (ECF No. 13, PageID 164.) They assert that they "lack authority to issue [Ahmed] a DV-2021 visa and otherwise grant [Ahmed]'s application for adjustment of status, even if this Court found fault in [their] denial decision." (ECF No. 13, PageID 164.) They emphasize that they "adjudicated—and denied—[Ahmed's] application for a diversity visa *on the merits* before the September 30 deadline" and that Ahmed "did not initiate this action until . . . after the end of the 2021 fiscal year[,] so [he] cannot argue that jurisdiction lies because he sought judicial review when a DV-2021 was still available." (ECF No. 13, PageID 164.) Finally, they argue that under *Ramirez-Canales*, "the availability of *nunc pro tunc* relief is limited to two situations"—first, "'to retroactively grant the Attorney General's discretion to permit an alien to reapply for admission after being deported and subsequently reentering the country,'" and second "'to apply the law as it existed at the time of the violation instead of current law'"—"neither of which is present here." (ECF No. 13, PageID 165) (quoting *Ramirez-Canales*, 517 F.3d at 910).

## Discussion

The Court agrees with Defendants.

As noted above, 8 U.S.C. § 1154(a)(1)(I)(ii)(II) provides that "[a]liens who qualify, through random selection, for a [diversity] visa under section 1153(c) of this title shall remain eligible to receive such visa *only through the end of the specific fiscal year for which they were selected*." (Emphasis added). *Mwasaru* held, without

3

adding any *nunc pro tunc*-related qualification, that this statute "and its accompanying regulations prohibit the issuance of diversity visas after the expiration of the fiscal year." *Mwasaru*, 619 F.3d at 549–51.

Ahmed's 2021 diversity visa application was denied on the merits, no 2021 diversity visa was set aside for him, and he did not file suit challenging the denial in this Court until after the fiscal year of 2021 had ended. (ECF No. 1.) Under these circumstances, Defendants "do not have authority to issue a 20[21] diversity visa" for him. *Mwasaru*, 619 F.3d at 547. Thus, this case is moot. *Id.* at 549–53; *see also Almaqrami v. Pompeo*, 933 F.3d 774, 780 (D.C. Cir. 2019) ("More often, the plaintiff files suits *after* the selection FY has ended. Because diversity visas expire when the selection FY ends, that plaintiff does not have a statutory right to the requested visa and the government does not have a duty to issue her one. Courts faced with this situation have dismissed these lawsuits as moot." (Internal citation omitted)); *Zixiang Li v. Kerry*, 710 F.3d 995, 1001 (9th Cir. 2013) ("The district court also held that it lacked jurisdiction over Plaintiffs' claims seeking to recapture visa numbers from previous fiscal years, because these claims were moot. The district court's decision was correct.").

*Ramirez-Canales* does not provide otherwise. In that case, the petitioner, who was seeking an immediate relative visa but had been ruled "inadmissible under INA § 1182(a)(9)(C)(i)(I)," appealed the Board of Immigration Appeals ("BIA")'s

4

determinations that he was he was "neither (1) eligible for adjustment of status under § 1255(i)(2)(A), nor (2) entitled to relief under § 1255(i) *nunc pro tunc*." *Ramirez-Canales v. Holder* ("*Ramirez-Canales II*"), 378 F. App'x 540, 541 (6th Cir. 2010). The Sixth Circuit affirmed the first determination. *Ramirez-Canales*, 517 F.3d at 907–10. Turning to the second, it described the "limited" situations in which the BIA generally uses its "equitable power to grant orders *nunc pro tunc*" that are identified by Defendants above. *Id.* at 910. It then found that the immigration judge and the BIA had not addressed whether they could provide the type of *nunc pro relief* that the petitioner was seeking, which was for "the court [to] grant his application for adjustment of status retroactively," as if he had never violated § 1182(a)(9). *Id.* at 910–11. So it remanded the case for the BIA to consider that issue. *Id.* at 911.

> After remand, the BIA issued a brief decision, reiterating its lack of discretion to allow the petitioner to "reapply for admission after being deported and subsequently reentering the country." The BIA cited *Matter of Torres–Garcia*, 23 I. & N. Dec. 866, 875 (BIA 2006), in which it determined that 8 U.S.C. § 1182(a)(9)(C)(ii) left the Attorney General with no discretion to grant a waiver of § 1182(a)(9)(C)(i) inadmissibility—"either retroactively or prospectively, prior to the end of this 10–year period." The BIA acknowledged [the Sixth Circuit's] suggestion in *Ramirez–Canales I*, that *nunc pro tunc* relief could essentially erase the violation, and stated that it would "decline such a broad exercise of our discretionary powers." It then supported its decision by describing how Congress had specifically enumerated permissible waivers, in §§ 1182(a)(9)(C)(ii) and (iii) (providing exceptions for aliens seeking admission more than 10 years after the alien's last departure from the United States and for certain victims of battering or cruelty). The BIA concluded it was without authority to "fashion" a new waiver by allowing the requested relief, noting that even if petitioner were considered a "returning resident" when he

5

>reentered the United States, he would still be left inadmissible under § 1182(a)(9)(C)(i)(I), as he reentered without admission.

*Ramirez-Canales II*, 378 F. App'x at 543–44. The petitioner appealed to the Sixth Circuit again, and the Sixth Circuit affirmed the BIA's decision, "defer[ring] to the BIA's reasonable interpretations of the INA." *Id.* at 542.

At bottom, *Ramirez-Canales* does not suggest that petitioners seeking diversity visas under § 1153(c) of the INA can circumvent § 1154(a)'s time restriction on the issuance of those visas by seeking *nunc pro tunc* relief. *Cf. Yung-Kai Lu v. Tillerson*, 292 F. Supp. 3d 276, 282–83 (D.D.C. 2018) ("[T]he mandamus and declaratory relief sought by Lu—the *nunc pro tunc* processing of his Diversity Visa application after the relevant fiscal year—is statutorily barred."), *summarily affirmed by* 2018 WL 5919254 (D.C. Cir. 2018). Instead, *Ramirez-Canales* dealt with an application for a different type of visa and did not discuss §1154(a). It also noted that, in the immigration context, *nunc pro tunc* relief is generally limited to two situations that both differ from the situation here, as Ahmed has not been deported and does not allege that the relevant law has changed. And ultimately it upheld the denial of *nunc pro tunc* relief that was before it. Therefore, *Ramirez-Canales* does not undermine *Mwasaru*'s controlling impact on this case.

## Conclusion

Accordingly, Ahmed's Complaint is **DISMISSED WITHOUT PREJUDICE** as moot under Federal Rule of Civil Procedure 12(h)(3). In turn, Defendants' pending Motion to Dismiss (ECF No. 6) is **DENIED** as moot.

**IT IS SO ORDERED.**

s/Paul D. Borman
Paul D. Borman
United States District Judge

Dated: August 2, 2023